Angelika D. Charczuk
ADC Immigration Law
2027 W. Division St., Suite 405
Chicago, Illinois 60622
Telephone: 773-217-0855
Email: ang@adcimmigration.com
Counsel for Petitioner

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| Albeiro Remolina Ropero, | Case No. 1:26-cv-3 |
| Petitioner, | |
| v. | Honorable Judge _____ |
| Sandra Salazar, Immigration Customs Enforcement and Removal Operations Chicago Field Office Director, in her official capacity; Shawn Byers, Deputy Immigration Customs Enforcement Field Office Director, in his official capacity; Brison Swearingen, Clay County Sheriff, in his official capacity; Marcos Charles, Acting Executive Associate Director, Enforcement and Removal Operations, in his official capacity; Todd M. Lyons, Acting Director, Immigration Customs Enforcement, in his official capacity; Madison Sheahan, Deputy Director, Immigration Customs Enforcement, in her official capacity; Kristi Noem, Secretary of the Department of Homeland Security, in her official capacity; Pam Bondi, Attorney General of the United States, in her official capacity; and Donald J. Trump, President of the United States, in his official capacity, | **PETITION FOR WRIT OF HABEAS CORPUS AND REQUEST FOR RELEASE FROM DETENTION**<br><br>**Expedited Hearing Requested** |
| Respondents. | |

PETITION FOR WRIT OF HABEAS CORPUS - 1

## PETITION FOR WRIT OF HABEAS CORPUS AND REQUEST FOR RELEASE FROM DETENTION

NOW COMES the Petitioner, Albeiro Remolina Ropero ("Petitioner" or "Mr. Remolina Ropero"), by and through his attorney, Angelika D. Charczuk of ADC Immigration Law, and hereby submits a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 to this Court.

## INTRODUCTION

1.      Petitioner, Mr. Relomina Ropero was apprehended by the Department of Homeland Security (DHS) U.S. Immigration & Customs Enforcement (ICE) officers in a warrantless immigration enforcement action on or about December 29, 2025, while parked with his wife in his car in Chicago, Illinois. ICE's actions were part of its ongoing "Operation Midway Blitz," a coordinated enforcement operation known to involve suspicionless street-level arrests without judicial warrants.

2.      Despite informing ICE agents that their three minor children were alone and unattended inside the family home, Respondent and his spouse were nonetheless seized and transported to the Broadview ICE facility, and the minor children were left abandoned at home.

3.      Mr. Remolina Ropero suffers from severe, uncontrolled seizure disorder. Without his daily anticonvulsant medication, he is at risk of status epilepticus, brain injury, and death. This is not a routine medical issue—even a single missed dose can be fatal. Any transfer, delay, or interruption in medication administration places him in grave and imminent danger.

4.      Upon arrival, Petitioner and his wife were forcibly separated. The officer processing Petitioner did not speak Spanish, repeatedly demanding "English," even though neither Petitioner nor his spouse understands English. ICE officers then presented him with

PETITION FOR WRIT OF HABEAS CORPUS - 1

multiple documents and compelled him to sign and provide his fingerprint as evidence of acknowledgement without explanation or translation, rendering any purported consent uninformed, coerced, and invalid.

5.      Notably, the U.S. District Court for the Northern District of Illinois in Chicago has issued a temporary restraining order governing conditions at the Broadview ICE facility. The TRO Order requires that all detainees be provided interpreter services and that all documents presented to detainees include translations and a reasonable opportunity to understand them in their preferred language. ICE's failure to provide meaningful translation or interpretation here constitutes a direct violation of that TRO and further demonstrates the ongoing constitutional and statutory violations at Broadview.[1] Mr. Remolina Ropero and his spouse repeatedly informed ICE that Mr. Remolina Ropero suffers from a severe epileptic seizure disorder and that he must take prescribed anticonvulsant medication twice daily to avoid life-threatening seizures. ICE officers were informed that the medication was at their home and allowed a family friend to retrieve it and return it to Broadview. ICE agents assured the family friend that the medication would be provided to Mr. Remolina Ropero and that he would be transferred to Indiana only after medical access was secured.

6.      Mr. Remolina Ropero's spouse was released mid-morning on December 29th, 2025. Later that same afternoon, ICE affirmatively informed Mr. Remolina Ropero and his wife that he was going to be released, instructing the family to come pick him up. A family friend

---

[1] In *Moreno Gonzalez v. Noem*, Judge Robert W. Gettleman issued a temporary restraining order on November 5, 2025, requiring Immigration and Customs Enforcement to improve conditions at the Broadview ICE facility — including providing adequate hygiene, bedding, prescribed medications, access to legal counsel, and phone access — after finding that detainees "have suffered, and are likely to suffer, irreparable harm" without such relief.

PETITION FOR WRIT OF HABEAS CORPUS - 2

waited at Broadview for more than an hour. ICE then informed the family friend that a transfer

decision had been made to Clay County, Indiana.

7.      Despite repeated concerns raised by undersigned counsel via email and

telephonically to Supervisory Detention Deportation Officer Esteban Rivas, ICE failed to

provide Mr. Remolina Ropero with his prescribed seizure medication throughout the night of

December 29th and into the following day. By the morning of December 30, 2025, he had

missed at least two doses of his medication, as communicated to his spouse and a family friend

through text messages from the detention facility.

8.      At 2:42 p.m. CST that same day, acting Chicago ICE Assistant Field Office

Director Keith Taylor informed undersigned counsel by email that Petitioner's medication was

"indeed being provided." However, at 4:12 p.m., Mr. Remolina Ropero sent a message from the

Clay County Detention Center asserting that neither his December 29th nighttime dose nor his

December 30th morning dose had been administered, directly contradicting ICE's

representations to counsel.

9.      Undersigned counsel followed up again with ICE at **5:06 p.m.** In response,

Supervisory Detention Deportation Officer Esteban Rivas replied at **6:40 p.m.** stating:

> "Your client was allowed to take his medication yesterday. Today, in the morning,
> he was screened by the intake facility there at Clay County Jail. The medication
> had to be reviewed and approved by the jail to allow him to continue its use. He
> was provided 2 500mg tabs since that is what they have in stock, and his order is
> for 1000mg BID. He will receive again in the morning."

10.     Notably, this response does not dispute that ICE failed to administer his nighttime

or morning doses, and instead attempts to retroactively justify the deprivation based on intake

processing. These inconsistent and irreconcilable accounts further demonstrate ICE's

PETITION FOR WRIT OF HABEAS CORPUS - 3

indifference to his serious medical need that is life threatening as well as the unreliability of ICE's representations regarding his care.

11.    Mr. Remolina Ropero has resided in Illinois since approximately June 2024. He is the father of three minor children, all three of whom reside with him and rely on his financial, emotional, and physical support. He and his family are baptized and active members of the church of Jesus Christ of Latter Day Saints. Mr. Remolina Ropero has no criminal record and had no encounters with law enforcement agencies prior to December 29th, 2025.

12.    At the time of filing, it was last known that Mr. Remolina Ropero was detained at the Clay County Justice Center, located at 611 East Jackson Street, Brazil, Indiana 47834, after initial processing at the Broadview ICE facility following his arrest in Chicago, Illinois.

13.    Petitioner faces unlawful detention because the Department of Homeland Security (DHS) and the Executive Office of Immigration Review (EOIR) determined Petitioner is subject to mandatory detention per current application of the DHS July 8, 2025, policy as well as the May 2025 Board of Immigration Appeals ("Board" or "BIA") decisions in *Matter of Q. Li*, 29 I. & N. Dec. 66 (2025) and September 2025 *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (2025). Mr. Remolina Ropero files this petition shortly after his detention due to this well-documented practice of ICE denying similarly situated individuals the ability to seek a custody redetermination in front of an Immigration Judge (IJ), and thus subjecting them to prolonged arbitrary confinement.

14.    Petitioner is neither a flight risk nor a danger to the community, and he has strong and extensive ties to Chicago. His family and community members have suffered extreme hardship since Petitioner's absence, particularly given their strong family relationships.

15.     Petitioner and his family filed their asylum petition with the Chicago Immigration Court on September 20, 2024. They have complied with all requirements by DHS and ERO, including updating their address, attending required appointments, and diligently fulfilling obligations imposed by ICE as a condition of initial release from custody on their own recognizance upon their entry to the United States. They filed their asylum application within the one-year deadline. The family is *prima facie* eligible for relief from removal in the form of asylum, withholding of removal, and protection under the Convention Against Torture due to persecution in Venezuela and ongoing well-founded fear of return to that country.

16.     However, on December 29, 2025, ICE detained him without individualized assessment, notice, or opportunity to be heard, on the decision of an individual without authority to do so, without findings required by law, without a warrant, and in violation of the Constitution, agency rules, and the October 7, 2025, Order in the *Castañon Nava* Settlement. *See Castañon Nava v. DHS*, 18-cv-3757-RRP (N.D. Ill.).

17.     On November 12, 2025, Judge Cummings ordered the release of the hundreds of immigration detainees believed to be arrested in warrantless stops in violation of the extended consent decree. *Id*. The Court of Appeals for the Seventh Circuit declined to stay the October 7, 2025, extension of the Consent Decree but granted in part DHS' request to stay the November 12th order of release pending appeal. *See Margarito Castanon Nava v. U.S. Department of Homeland Security*, No. 25-3050 (7th Cir. Dec. 11, 2025) (J. Kirsch dissenting). Crucially, the Court noted that "[a]s for those individuals who were arrested without a warrant, we believe that Defendants [DHS] are not likely to succeed on their argument that these individuals are subject to mandatory detention under § 1225(b)(A)(2)." *Id*. at 23. The Court granted DHS a 14-day stay

of the December 11, 2025, order "to seek emergency relief from the Supreme Court, if necessary." *Id*. at 27.

18.     Petitioner is charged with having entered the United States without admission or inspection. *See* 8 U.S.C. § 1182(a)(6)(A)(i). Based on this presumed allegation in Petitioner's removal proceedings, DHS will deny Petitioner's release from immigration custody, consistent with a new DHS policy issued on July 8, 2025, instructing all ICE employees to consider anyone alleged to be inadmissible under § 1182(a)(6)(A)(i)—i.e., those who are alleged to have entered the United States without admission or inspection—to be subject to mandatory detention under 8 U.S.C. § 1225(b) and therefore ineligible to be released on bond.

19.     On May 15, 2025, the Board of Immigration Appeals (BIA or the Board) issued its precedential decision, binding on all immigration judges, eliminating IJs' jurisdiction to review the custody determinations of noncitizens who at one point in time were subject to mandatory detention provisions of § 1225, were released by DHS, and subsequently re-detained without a DHS warrant. *See Matter of Q. Li*, 29 I. & N. Dec. 66 (BIA 2025). Similarly, on September 5, 2025, the BIA further held that an Immigration Judge has no authority to consider bond requests for any person who entered the United States without admission. *See Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025). The Board determined that such individuals are subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) and therefore ineligible to be released on bond, thus stripping the authority of Immigration Judges to provide a bond to a considerably expanded class of noncitizens.

20.     Further, despite a legal ruling in *Rodriguez v. Bostock*, 2025 WL 1193850 (W.D. Wa. Apr. 24, 2025) and *Maldonado Bautista v. Santacruz*, No. 5:25-CV-01873-SSS-BFM, (C.D. Cal. Dec. 18, 2025), rejecting this position, Respondents continue to maintain that noncitizens

who entered the United States without inspection are not eligible for bond redetermination hearings, because they are applicants for *admission* within the meaning of 8 U.S.C. § 1225(b)(2)(A).

21.    Respondents' new legal interpretation is plainly contrary to the statutory framework and contrary to decades of agency practice applying § 1226(a) to individuals whose procedural posture mirrors that of Petitioner.

22.    Petitioner's detention on this basis violates the plain language of the Immigration and Nationality Act. Section 1225(b)(2)(A), mandating detention "in the case of an alien[2] who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted" does not apply to individuals like Petitioner – alleged to have previously entered without inspection, processed and released by DHS from custody under § 1226(a), placed into full removal proceeding under § 1229a, and established in the United States. 8 U.S.C. § 1225(b)(2)(A) (emphasis added). There is no evidence in the record, and certainly none presented by the arresting officers *prior* to Mr. Remolina Ropero's detention, that he was *seeking* admission or that the immigration officers engaged in the act of examining any purported application for admission.[3] To the contrary, Petitioner's warrantless detention appears to have resulted from the officers simply observing his physical appearance as a Latino male who was parked in his car.

23.    Instead, individuals like Mr. Remolina Ropero – i.e. already present in the United States after prior release from DHS custody at the time of their reapprehension – are subject to a

---

[2] Undersigned counsel recognizes this is the term utilized in all relevant authority and deliberately chosen by DHS over the more accurate "noncitizen" and thus quotes it as such. Nevertheless, counsel does so solely for consistency with the cited sources and without endorsing its continued use.

[3] The **approval** of an application for asylum is not considered an "admission" within the meaning of the INA; it thus follows that awaiting the adjudication of one is not "seeking admission." *See Matter of V-X-*, 26 I&N Dec. 147, 150 (BIA 2013) (Where "the respondent has not adjusted his status to that of a lawful permanent resident … despite his asylum status, [he] is not 'in and admitted to the United States.'")

different statute, § 1226(a), titled "Apprehension and detention of aliens" and specifically addressing their "[a]rrest, detention, and release." *Id*. Section 1226(a) allows for the issuance of a warrant and detention of alleged noncitizens, as well as release on conditional parole or bond. *See Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018) ("As noted, § 1226 applies to aliens already present in the United States … [and] creates a *default rule for those aliens* by permitting—but not requiring—the Attorney General to issue warrants for their arrest and detention pending removal proceedings.") (emphasis added). That statute expressly applies where individuals, like Petitioner, are alleged to be charged as inadmissible for having entered the United States without inspection.

24.    More importantly, the Government has changed course and now adopts the opposite view. Respondents should be judicially estopped from asserting their current interpretation of 8 U.S.C. § 1225(b)(2)(A), because they previously prevailed in litigation after asserting the opposite interpretation. As explained in *New Hampshire v. Maine*, 532 U.S. 742 (2001), judicial estoppel applies when a party assumes a position in a legal proceeding, succeeds in maintaining that position, and then adopts a contrary position in a subsequent proceeding to gain an unfair advantage. That is precisely what has occurred here. For decades, and in repeated federal litigation, Respondents successfully maintained that noncitizens who entered the United States without inspection and were placed in removal proceedings were detained under § 1226(a), not § 1225(b)(2), and therefore were entitled to individualized custody determinations by an Immigration Judge unless subject to § 1226(c). Courts accepted that position, and DHS administered the statute accordingly. *See*, e.g., 62 Fed. Reg. 10,312, 10,323 (Mar. 6, 1997); H.R. Rep. No. 104-469, pt. 1, at 229 (1996).

25.    Now, however, Respondents assert the opposite — that all individuals who entered without inspection, regardless of time or circumstances, are subject to mandatory detention under § 1225(b) and categorically ineligible for bond. That reversal is reflected in DHS's 2025 "Interim Guidance" and the Board's decision in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), as well as DHS's reliance on *Matter of Q. Li*, 28 I. & N. Dec. 803 (BIA 2025). But *Q. Li* itself illustrates the instability of the Government's position: the respondent there ultimately lost, yet DHS now attempts to repurpose that case to justify a detention regime that it previously disavowed and that courts repeatedly rejected.

26.    Respondents' reversal is not merely a change in policy — it is a repudiation of legal positions on which they previously prevailed. Allowing DHS to now invoke § 1225(b) to impose mandatory detention on individuals who were previously governed by § 1226(a) would "undermine the integrity of the judicial process" and impose precisely the type of unfair detriment judicial estoppel is designed to prevent. *New Hampshire v. Maine*, 532 U.S. at 750. Accordingly, Respondents should be estopped from asserting this inconsistent position.

27.    Respondents are treating every noncitizen as alleged to be "present without admission" as though they are still standing at a port of entry. That interpretation is not only inconsistent with the regulatory definition of "*arriving alien*" but has repeatedly been rejected as an impermissible expansion of detention authority. *See Castañon Nava v. DHS*, No. 18-cv-3757, slip op. at 38–41 (N.D. Ill. Oct. 7, 2025) ("ICE's interpretation would effectively convert nearly every civil immigration arrest into a case of mandatory detention, contrary to the narrow statutory categories Congress created."). *See* 8 U.S.C. § 1225(b)(2); *See* 8 U.S.C. § 1226. DHS cannot rewrite that jurisdictional boundary by redefining long-settled statutory terms.

28.    U.S. District Court Judge Cummings rejected ICE's practice of invoking "mandatory detention" as a one-size-fits-all rationale for civil immigration arrests, finding that such an approach "would effectively convert nearly every civil immigration arrest into a case of mandatory detention, contrary to the narrow statutory categories Congress created." *Castañon Nava v. DHS*, No. 18-cv-3757, slip op. at 40 (N.D. Ill. Oct. 7, 2025). The Court further held that ICE cannot rely on post-hoc paperwork or internal relabeling to transform a discretionary 8 U.S.C. § 1226(a) arrest—or an unauthorized, warrantless detention—into a "mandatory" 8 U.S.C. § 1225(b)(2) custody.

29.    Accordingly, Petitioner seeks a writ of habeas corpus requiring that he be released unless Respondents provide a bond hearing under § 1226(a) within seven days.

## PARTIES

30.    Petitioner, Mr. Remolina Ropero, has lived in the United States for at least a year and a half. Prior to Petitioner's detention or about December 29, 2025, he resided in Chicago, Illinois. Petitioner is currently detained at Clay County Justice Center, located at 611 East Jackson Street, Brazil, Indiana 47834, and in the physical custody of the above-named Respondents.

31.    Respondent Brison Swearingen is the Sheriff in Clay County Indiana and Warden of the facility where Petitioner is currently detained. Respondents Shawn Byers and Sandra Salazar are the Immigration Customs Enforcement and Removal Operations Chicago Field Office Directors, and are custodial officials acting within the boundaries of the judicial district of the United States Court for the Northern District of Illinois, acting with authority designated to them in their official capacity by Respondents Marcos Charles, Acting Executive Associate

Director, Enforcement and Removal Operations, Todd M. Lyons, Acting Director, Immigration Customs Enforcement, Madison Sheahan, Deputy Director, Immigration Customs Enforcement, Kristi Noem, Secretary of DHS, Pam Bondi, Attorney General of the United States, and Donald J. Trump, President of the United States.

**STATEMENT OF FACTS AND PROCEDURAL HISTORY**

32.     Mr. Remolina Ropero is thirty-three (33) years old.  He has resided in the United States continuously for over a year, and he has resided at his current address in Illinois since approximately September 2024.

33.     Petitioner and his family entered the United States on or about May 29, 2024, surrendered to DHS officials immediately upon entry expressing fear of return, were released from custody under own recognizance within approximately two days under authority granted in § 1226(a), and were placed in removal proceedings under 8 U.S.C. §1229a between May 29th and May 30th to pursue their asylum claims. *See Exhibit Index*. Their Master Calendar Hearing is scheduled for March 17, 2026, at 9:00 am at the Chicago Immigration Court, and after his detention, Mr. Remolina Ropero's hearing has been advanced to January 13, 2026, at 9:00 am.

34.     Petitioner has a severe seizure disorder, a serious life-threatening medical condition that requires medication. Without his daily anticonvulsant medication, he is at risk of status epilepticus, brain injury, and death within hours. DHS already failed to provide the appropriate medical care to his life-threatening conditions, and Petitioner already missed at least two (2) dosages of his medication.

35.     Crucially, the onset of Petitioner's seizures did not occur until adulthood, and the full extent of his condition, including further diagnoses as well as potential complications and additional risk factors, continues to be evaluated by his medical providers.

36.     Petitioner is the father of three minor children, all of whom reside in his care. He financially provides for and supports them, and his continued presence in the United States is vital to their safety, well-being, and stability.

37.     Mr. Remolina Ropero is a devoted husband to his spouse and deeply engaged and supportive parent to his children. He is actively involved in the day-to-day care and upbringing of his children, ensuring that they have the necessities of life, as well as love and emotional support.

38.     Petitioner was lawfully employed - with lawful employment authorization issued by DHS - and contributed valuable labor to his community. Through his steady employment, he is able to provide for his nuclear family, as well as contribute to the local economy.

39.     Mr. Remolina Ropero Remolina  has no criminal convictions in any country. He has maintained a clean criminal record throughout his time in the United States, demonstrating his good moral character and dedication to abiding by the laws of this country.

40.     Petitioner has established significant ties to the United States through his family relationships, his employment, his religious involvement, and his integration into the community. He and his family are baptized and active members of the church of Jesus Christ of Latter Day Saints and Mr. Remolina Ropero has no criminal record.

41.     Petitioner's circumstances present compelling humanitarian factors, particularly because of his serious medical condition. In addition, his three young children, whose childhood

and stability had already been disturbed by the family's need to flee, would suffer exceptional and extremely unusual hardship without his presence, financial, and emotional support.

42.    Upon arrest on or about December 29, 2025, ICE transferred Mr. Remolina Roperto to the U.S. Immigration & Customs Enforcement Broadview Facility, and subsequently taken to Clay County Detention Center where he is believed to be currently detained. Petitioner's absence is creating a serious disruption to his children's lives. In addition, his removal or detention would place them at risk of material deprivation, as they would lose their primary source of income and security. The children need Petitioner to return to their home immediately for the continued care that Petitioner provides to his children.

43.    Mr. Remolina Roperto is nevertheless prima facie eligible for humanitarian protection under 8 U.S.C. §§ 1158 (asylum), 1231(b)(3) (withholding of removal), and the Convention Against Torture, because he has a well-founded fear of persecution and torture if returned to his country of nationality.


## JURISDICTION

44.    This Court has jurisdiction over this habeas petition under 28 U.S.C. § 2241 because Mr. Remolina Ropero resided and was arrested and initially detained within the Northern District of Illinois, and because ICE's operative custody decisions—including the decision to detain, deny release, and effectuate his transfer—were made and executed through ICE's Chicago Field Office and the Broadview ICE Facility in this District. The ICE Chicago Field Office continues to exercise jurisdiction over all respondents detained at Clay County Justice Center in Indiana.

45.    Although Mr. Remolina Ropero was physically transferred to Indiana on the evening of December 29, 2025, the Chicago Field Office retained legal custody and exclusive decision-making authority over his detention at all times relevant here and continues to do so. That evening, ICE Chicago affirmatively represented to Mr. Remolina Ropero as well as the family liaison with whom officers had been communicating that day that Petitioner would be released from the Broadview Staging Facility and requested that Petitioner arrange for pick up. During the 5:02 pm CST telephonic conversation with undersigned counsel, ICE Supervisory Detention Deportation Officer Esteban Rivas expressed same, affirming that the delay stemmed from "final supervisory review." During the subsequent 7:01 pm CST telephonic conversation, Officer Rivas informed counsel that Petitioner's transfer to Clay County was to ensure access to medical treatment, as no supervisory decision had been made by that time, and that Petitioner would be returned to Broadview for release once supervisory approval had been obtained. In reasonable and detrimental reliance on those representations, counsel refrained from filing an emergency habeas petition while ICE considered the request. ICE then issued its denial at approximately 6:30 p.m. on December 30, 2025, after normal court filing hours had closed and after the Department already effectuated the transfer.

46.    ICE may not manufacture a jurisdictional defeat by inducing counsel to delay filing through representations of imminent release, going so far as to ask Petitioner to call family to pick him up from Broadview and having them wait outside the facility for over an hour, and reversing course once the transfer had been made. At the time of overnight transfer to ensure Petitioner's access to medical care, DHS affirmatively indicated that the discretionary request for humanitarian release was being evaluated, and as such, the locus of custody decision-making

remained with the Chicago Field Office. Finally, DHS, not state law enforcement, exercises legal

custody authority over immigration detainees.

## **VENUE**

47.     Venue is proper in the Northern District of Illinois because the events giving rise

to this habeas petition occurred in this District: ICE seized Mr. Remolina Ropero in Chicago,

initially detained him at the Broadview ICE Staging Facility, coerced him into signing

documents there, denied him constitutionally required language access there, and withheld

life-sustaining seizure medication there. These are the operative facts underlying the unlawful

custody challenged in this petition.

48.     ICE's later transfer of Mr. Remolina Ropero to the Clay County Detention Center

in Indiana—after affirmatively representing that he would be released from Broadview—does

not defeat venue. Because the custody decisions, constitutional violations, and promised release

all occurred in this District, the Northern District of Illinois is the proper and most convenient

forum for adjudicating this habeas petition.

## **REQUIREMENTS OF 28 U.S.C. § 2243**

49.     The Court must grant the petition for writ of habeas corpus or issue an order to

show cause (OSC) to the respondents "forthwith," unless the petitioner is not entitled to relief. 28

U.S.C. § 2243. If an order to show cause is issued, the Court must require respondents to file a

return "within *three days* unless for good cause additional time, not exceeding twenty days, is

allowed." *Id*. (emphasis added).

50.    Courts have long recognized the significance of the habeas statute in protecting individuals from unlawful detention. Habeas corpus is "perhaps the most important writ known to the constitutional law . . . affording as it does a swift and imperative remedy in *all* cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963) (emphasis added). "The application for the writ usurps the attention and displaces the calendar of the judge or justice who entertains it and receives prompt action from him within the four corners of the application." *Yong v. I.N.S.*, 208 F.3d 1116, 1120 (9th Cir. 2000) (citation omitted).

## **LEGAL FRAMEWORK**

51.    Habeas relief is available when a person is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

52.    The INA prescribes three basic forms of detention for the vast majority of noncitizens in removal proceedings.

53.    First, 8 U.S.C. § 1226 authorizes the detention of noncitizens in standard removal proceedings before an Immigration Judge ("IJ"). *See* 8 U.S.C. § 1229(a). Individuals in § 1226(a) detention are generally entitled to a bond hearing at the outset of their detention, *see* 8 C.F.R. §§ 1003.19(a), 1236.1(d), while noncitizens who have been arrested, charged with, or convicted of certain crimes are subject to mandatory detention, *see* 8 U.S.C. § 1226(c). Second, the INA provides for mandatory detention of noncitizens subject to expedited removal under 8 U.S.C. § 1225(b)(1) and for other recent arrivals seeking admission referred to under § 1225(b)(2). Last, the INA also provides for detention of noncitizens who have been ordered removed, including individuals in withholding-only proceedings, *see* 8 U.S.C. § 1231(a)–(b).

54.    This case concerns the detention provisions at §§ 1226(a) and 1225(b).

55.    The detention provisions at § 1226(a) and § 1225(b) were enacted as part of the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA) of 1996, Pub. L. No. 104-–208, Div. C, §§ 302-–03, 110 Stat. 3009-546, 3009–582 to 3009–583, 3009–585. Section 1226(a) was most recently amended earlier this year by the Laken Riley Act, Pub. L. No.119-1, 139 Stat. 3 (2025).

56.    Following the enactment of the IIRIRA, EOIR drafted new regulations explaining that, in general, people who entered the country without inspection were not considered detained under § 1225 and that they were instead detained under § 1226(a). *See* Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997).

57.    Thus, in the decades that followed, most people who entered without inspection and were placed in standard removal proceedings received bond hearings, unless their criminal history rendered them ineligible pursuant to 8 U.S.C. § 1226(c). That practice was consistent with many more decades of prior practice, in which noncitizens who were not deemed "arriving" were entitled to a custody hearing before an IJ or other hearing officer. *See* 8 U.S.C. § 1252(a) (1994); *see also* H.R. Rep. No. 104-469, pt. 1, at 229 (1996) (noting that § 1226(a) simply "restates" the detention authority previously found at § 1252(a)).

58.    On July 8, 2025, ICE, "in coordination with" the U.S. Department of Justice (DOJ), announced a new policy that rejected well-established understanding of the statutory framework and reversed decades of practice.

59.    The new policy, entitled "Interim Guidance Regarding Detention Authority for Applicants for Admission," claims that all persons who entered the United States without inspection shall now be subject to mandatory detention provision under § 1225(b). The policy

applies regardless of when and where a person is apprehended, and affects those who have resided in the United States for months, years, and even decades.

60. This expansion of § 1225(b) did not arise in a vacuum. It was enabled by the Board's decision in *Matter of Q. Li*, 29 I. & N. Dec. 66 (BIA 2025), which recharacterized the detention framework for "applicants for admission" in a way that collapses the statutory boundary between border custody and interior enforcement. *Matter of Q. Li* held that when DHS arrests and detains a noncitizen without a warrant as an "arriving alien," § 1225(b) detention governs continuously, irrespective of prior release from DHS custody under 8 U.S.C. § 1182(d)(5)(A) or documentation and legal processes actually utilized by DHS. *Id*. at 70. This construction allows DHS to impose a border-style, no-bond detention regime long after an individual has been released into the United States, eliminating Immigration Judge custody review and converting ordinary removal proceedings into functionally indefinite mandatory detention.

61. On September 5, 2025, the BIA further broadened this position in a published decision, *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025). There, the Board held that all noncitizens who entered the United States without admission or parole are subject to detention under § 1225(b)(2)(A) and are ineligible for IJ bond hearings. *Id*. That interpretation rests on the detention framework articulated in *Matter of Q. Li* and widens it to explicitly permit DHS to choose § 1225(b) or § 1226(a) and change that decision at any point of the process, regardless of prior documents or proceedings. *Id*. at 227. Notably, while *Q. Li*'s re-detention without a § 1226(a) warrant lay at the heart of the Board's analysis there, *Yajure Hurtado* reasons that *Q. Li*'s analysis that "'aliens detained under section 236(a) [1226(a)] may be eligible for discretionary release on bond' does not mean that *all* aliens detained while in the United States

with a warrant of arrest are detained under section 236(a) and entitled to a bond hearing." *Id.* (emphasis in original) Interestingly, DHS Form I-200, Warrant for Arrest of Alien *itself* addresses "[a]ny immigration officer authorized pursuant to *sections 236* and 287 of the Immigration and Nationality Act."[4] (emphasis added). Form I-200 makes no mention of § 1225; for its part, the Board in *Yajure Hurtado* summarily states that "this issue of statutory interpretation is complicated by a patchwork of statutes implemented at different times and intended to address different issues" and concludes the decision three paragraphs later. *Id.* at 227-229.

62.     Since Respondents adopted their new policies, dozens of federal courts have rejected this interpretation of the INA's detention authorities. Federal courts have likewise rejected *Matter of Yajure Hurtado*, which adopts the same reading of the statute as ICE. *See, e.g., Maldonado Bautista v. Santacruz*, No. 5:25-CV-01873-SSS-BFM (C.D. Cal. Dec. 18, 2025).

63.     Even before ICE or the BIA introduced these nationwide policies, IJs in the Tacoma, Washington, immigration court stopped providing bond hearings for persons who entered the United States without inspection and who have since resided here. There, the U.S. District Court in the Western District of Washington found that such a reading of the INA is likely unlawful and that § 1226(a), not § 1225(b), applies to noncitizens who are not apprehended upon arrival to the United States and ordered bond hearing under § 1226(a). *Rodriguez Vazquez v. Bostock*, 779 F. Supp. 3d 1239 (W.D. Wash. 2025).

64.     Subsequently, court after court has adopted the same reading of the INA's detention authorities and rejected ICE and EOIR's new interpretation. *See Maldonado Bautista v. Santacruz*, No. 5:25-CV-01873-SSS-BFM, (C.D. Cal. Dec. 18, 2025), *See, e.g., Gomes v. Hyde*,

---

[4]    Sample DHS Form I-200, Warrant for Arrest of Alien, is available at https://www.ice.gov/sites/default/files/documents/Document/2017/I-200_SAMPLE.PDF.

No. 1:25-CV-11571-JEK, 2025 WL 1869299 (D. Mass. July 7, 2025); *Rosado v. Figueroa*, No. CV 25-02157 PHX DLR (CDB), 2025 WL 2337099 (D. Ariz. Aug. 11, 2025), report and recommendation adopted, No. CV-25-02157-PHX-DLR (CDB), 2025 WL 2349133 (D. Ariz. Aug. 13, 2025); *Lopez Benitez v. Franci*s, No. 25 CIV. 5937 (DEH), 2025 WL 2371588 (S.D.N.Y. Aug. 13, 2025); *Arrazola-Gonzalez v. Noem*, No. 5:25-cv-01789- ODW (DFMx), 2025 WL 2379285 (C.D. Cal. Aug. 15, 2025); *Samb v. Joyce*, No. 25 CIV. 6373 (DEH), 2025 WL 2398831 (S.D.N.Y. Aug. 19, 2025); *Ramirez Clavijo v. Kaiser*, No. 25-CV-06248-BLF, 2025 WL 2419263 (N.D. Cal. Aug. 21, 2025); *Kostak v. Trump*, No. 3:25-cv-01093-JE-KDM, 2025 WL 2472136 (W.D. La. Aug. 27, 2025); *Lopez-Campos v. Raycraft*, No. 2:25-cv-12486-BRM-EAS, 2025 WL 2496379 (E.D. Mich. Aug. 29, 2025).

65.     Courts have uniformly rejected DHS's and EOIR's new interpretation because it defies the INA. As the *Rodriguez Vazquez* court and others have explained, the plain text of the statutory provisions demonstrates that § 1226(a), not § 1225(b), applies to individuals like Petitioner.

66.     Section 1226(a) applies by default to all persons "pending a decision on whether the [noncitizen] is to be removed from the United States." These removal hearings are held under § 1229a, to "decid[e] the inadmissibility or deportability of a[] [noncitizen]."

67.     The text of § 1226 also explicitly applies to people charged as being inadmissible, including those alleged to have entered without inspection. *See* 8 U.S.C. § 1226(c)(1)(E). Subparagraph (E)'s reference to such individuals makes clear that, by default, such people are afforded a bond hearing under subsection (a). As the *Rodriguez Vazquez* court explained, "[w]hen Congress creates 'specific exceptions' to a statute's applicability, it 'proves' that absent those exceptions, the statute generally applies." *Rodriguez Vazquez*, 779 F. Supp. 3d at 1257

(citing *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 400 (2010)); *see also Gomes*, 2025 WL 1869299, at *7.

68.    Section 1226 therefore leaves no doubt that it applies to people who face charges of being inadmissible to the United States, including those who are alleged to be present without admission or parole.

69.    By contrast, § 1225(b) applies to people arriving at U.S. ports of entry or who recently entered the United States. The statute's entire framework is premised on inspections at the border of people who are "seeking admission" to the United States. 8 U.S.C. § 1225(b)(2)(A). Indeed, the Supreme Court has explained that this mandatory detention scheme applies "at the Nation's borders and ports of entry, where the Government must determine whether a[] [noncitizen] seeking to enter the country is admissible." *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018).

70.    Here, DHS's own custody records confirm that Petitioner was detained and released exclusively under 8 U.S.C. § 1226. All custody documents issued in Petitioner's case—including the Order of Release on Recognizance—were § 1226 instruments, not parole under 8 U.S.C. § 1182(d)(5)(A). Under *Matter of Q. Li*, § 1182(d)(5)(A) parole is the sole mechanism by which a noncitizen subject to mandatory detention under § 1225(b) can be released from confinement. *See Matter of Q. Li*, 29 I&N Dec. at 69. By electing to use § 1226(a) custody procedures at every step of agency decisions in this case, DHS extinguished any § 1225(b) authority and cannot now seek to retroactively reclassify Petitioner as subject to mandatory detention under § 1225(b).

71.     Accordingly, the mandatory detention provisions of § 1225(b) do not apply to people like Petitioner, who have been released from DHS custody under § 1226(a) and were already residing in the United States at the time they were reapprehended.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

72.     Exhaustion is not required of this claim. *See Gonzalez v. O'Connell*, 355 F.3d 1010, 1016 (7th Cir. 2004). Exhaustion is not required in four (4) circumstances: (1) When delay would cause undue prejudice; (2) When the agency lacks the ability or competence to resolve the dispute; (3) When exhaustion would be futile because the agency has already decided the issue; and (4) When substantial constitutional questions are raised. *Id.* (citing *Iddir v. INS*, 301 F.3d 492, 498 (7th Cir. 2002)). This claim falls into three of the four exceptions to exhaustion.

73.     First and foremost, delay would cause undue prejudice to Petitioner. In *Matter of Q. Li*, 29 I&N Dec. 66, and *Matter of Yajure Hurtado*, 29 I&N Dec. 216, the BIA held that under the plain language of 8 U.S.C. § 1225(b), IJs categorically lack jurisdiction to conduct bond hearings for noncitizens "arrested and detained without a warrant while arriving" or generally deemed "present in the United States without admission," even in cases where the DHS has elected to place such individuals into removal proceedings under INA § 240. *Matter of Q. Li,* 29 I&N Dec. at 69; *Matter of Yajure Hurtado*, 29 I&N Dec. at 229. First, the Board allowed DHS to choose to again subject noncitizens to mandatory detention under § 1225(b)(2) in subsequent re-detentions despite previous release from custody. *Matter of Q. Li* at 69. Then, the Board recharacterized § 1225(b)(2)(A) as a sweeping "catch-all" detention mandate for virtually all applicants for admission not subject to expedited removal under § 1225(b)(1). *Yajure Hurtado* at 219-220. In doing so, the Board selectively relies on *Jennings v. Rodriguez*, 583 U.S. 281, 299

(2018), to claim that detention under § 235(b)(2)(A) must continue "until removal proceedings have concluded." *Id*. at 225. Additionally, Immigration Judges have been ordered to ignore the final ruling of *Maldonado Bautista v. Santacruz*, No. 5:25-CV-01873-SSS-BFM, (C.D. Cal. Dec. 18, 2025).

74.    For the same reason explained above, this claim falls into two (2) other exceptions: the agency lacks the ability or competence to resolve the dispute and exhaustion would be futile because the agency has already decided the issue.

75.    Secondly, since the Immigration Judge (IJ) is not empowered to overrule Board of Immigration Appeals precedent, particularly with respect to case law that is so recent, it would be futile to require Petitioner to first seek custody redetermination before the IJ. Crucially, the reasoning explained above represents a striking departure from decades of agency practice and jurisprudence. For years, DHS and the Immigration Courts have recognized the authority of Immigration Judges to conduct custody redetermination hearings in precisely these circumstances. The Board's sudden and disingenuous reinterpretation of the statute disregards both its own precedent and the constitutional concerns raised by prolonged detention without individualized review. By invoking "plain language" now—after years of contrary interpretation—the agency effectively insulates detention decisions from meaningful administrative review.

76.    Accordingly, the Petitioner has no further recourse within the Immigration Court system or the Board. The exhaustion requirement is therefore satisfied. In light of the Board's denial of Immigration Judge jurisdiction to hear custody redetermination requests, habeas corpus is the only mechanism available to challenge Respondent's ongoing detention and to vindicate

constitutional rights at stake. This habeas is being filed immediately because of the response of the Immigration Court and Board to individuals similar to Petitioner.

77.     Nor does 8 U.S.C. § 1226(e) bar review of this claim. Supreme Court and Seventh Circuit precedent establish that § 1226(e) does not strip district courts of habeas jurisdiction over challenges to the government's detention authority under the statute. *See Jennings*, 138 S. Ct. at 841 (citing *Demore v. Kim*, 538 U.S. 510, 516 (2003)); *see also Parra v. Perryman,* 172 F.3d 954, 957 (7th Cir. 1999). This claim fits comfortably within that description. Furthermore, even if those cases did not leave this court's habeas jurisdiction intact, the Constitution itself would. *See* U.S. Const., Art. I, § 9, cl.2; *see also Boumediene v. Bush*, 553 U.S. 723, 792-93 (2008) (attempts to strip habeas jurisdiction that do not leave an adequate alternative are inoperative). Petitioner is exercising his right to challenge the legality of his detention that falls under the jurisdiction of this honorable Court.

78.     Because the Immigration Court currently lacks jurisdiction to evaluate Petitioner's custody determination, Petitioner asks this Court to do so, and order that he be released immediately.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

### VIOLATION OF THE INA

79.     Petitioner incorporates by reference the allegations of fact set forth in the preceding paragraphs.

80.     The mandatory detention provision at 8 U.S.C. § 1225(b) does not apply to all alleged noncitizens residing in the United States who are alleged to be subject to the grounds of

inadmissibility. As relevant here, it does not apply to those who are alleged to have previously entered the country, were initially apprehended, processed, placed in removal proceedings, and released by Respondents under § 1226, and have resided in the United States prior to being reapprehended and. Such alleged noncitizens are detained under § 1226(a), unless they are subject to §1225(b)(1), § 1226(c), or § 1231.

81.    The application of § 1225(b) to Petitioner unlawfully mandates his continued detention and violates the INA.

## SECOND CLAIM FOR RELIEF

## VIOLATION OF THE BOND REGULATIONS

82.    Petitioner incorporates by reference the allegations of fact set forth in preceding paragraphs.

83.    In 1997, after Congress amended the INA through IIRIRA, EOIR and the then Immigration and Naturalization Service issued an interim rule to interpret and apply IIRIRA. Specifically, under the heading of "Apprehension, Custody, and Detention of [Noncitizens]," the agencies explained that "[d]espite being applicants for admission, [noncitizens] who are present without having been admitted or paroled (formerly referred to as [noncitizens] who entered without inspection) *will be eligible for bond and bond redetermination*." 62 Fed. Reg. at 10323 (emphasis added). The agencies thus made clear that individuals who are alleged to have entered without inspection were eligible for consideration for bond and bond hearings before IJs under 8 U.S.C. § 1226 and its implementing regulations.

84.    Nonetheless, in conjunction with *Matter of Q. Li* and *Matter of Yajure Hurtado*, DHS and EOIR have now implemented a policy and practice of applying § 1225(b) to individuals like Petitioner, who had already been processed and released from DHS custody

under § 1226(a), resided in the United States for over a year, where he has worked, lived, and established long-term connections, and was subsequently reapprehended in a warrantless and indiscriminate enforcement action.

85.    The application of § 1225(b) to Petitioner unlawfully mandates his continued detention and violates 8 C.F.R. §§ 236.1, 1236.1, and 1003.19.

## THIRD CLAIM FOR RELIEF

## VIOLATION OF  PROCEDURAL DUE PROCESS

86.    Petitioner repeats, re-alleges, and incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

87.    The government may not deprive a person of life, liberty, or property without due process of law. U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that the Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

88.    Petitioner has a fundamental interest in liberty and being free from arbitrary official restraint.

89.    The government's detention of Petitioner without a bond redetermination hearing to determine whether he is a flight risk or danger to others violates his right to due process. His indefinite, unchecked detention fundamentally violates constitutional protections against arbitrary restraints – protections our Founders undoubtedly sought to safeguard and guarantee.

## FOURTH CLAIM FOR RELIEF

## EQUAL ACCESS TO JUSTICE ACT UNDER 28 U.S.C. 2412 63

90.  If Petitioner prevails, he requests attorney's fees and costs under the Equal Access to Justice Act, as amended. 28 U.S.C. § 2412.

## **PRAYER FOR RELIEF**

WHEREFORE, Petitioner requests that this Court:

a.      Assume jurisdiction over this matter;

b.      Order that Petitioner shall not be transferred outside the Northern District of Illinois while this habeas petition is pending;

c.      Issue an Order to Show Cause ordering Respondents to show cause why this Petition should not be granted within three days;

d.      Issue a Writ of Habeas Corpus requiring that Respondents release Petitioner immediately or, in the alternative, immediately provide Petitioner with an individualized bond hearing pursuant to 8 U.S.C. §1226(a);

e.      Declare that Petitioner's detention is unlawful;

f.      Set aside Respondents' unlawful detention policy under the APA, 5 U.S.C. § 706(2);

g.      Award Petitioner reasonable attorney's fees and costs under the Equal Access to Justice Act ("EAJA"), as amended, 28 U.S.C. § 2412, and on any other basis justified underlaw; and

h.      Grant any other and further relief that this Court deems just and proper.

Respectfully submitted,

DATED:   1 of January of 2026
         Chicago, IL

s/Angelika D. Charczuk
Angelika D. Charczuk
ADC Immigration Law
2027 W. Division St., Suite 405
Chicago, Illinois 60622
Telephone: 773-217-0855
Email: ang@adcimmigration.com
Illinois ARDC No. 6338808

*Attorney for Petitioner-Plaintiff*

EXHIBIT INDEX

Exhibit 1 - Form I-220A, Order of Release on Recognizance
Exhibit 2 -  Form I-862, Notice to Appear ( 2 pages)
Exhibit 3 - Form I-286, Notice of Custody Determination
Exhibit 4 - EOIR Automated Case Information

**28 U.S.C. § 2242 VERIFICATION STATEMENT**

I am submitting this verification on behalf of the Petitioner because I am the Petitioner's attorney. I have reviewed relevant documentation of the events described in this Petition and Complaint reasonably available to me prior to and at the time of filing. On the basis of those documents, past discussions with the Petitioner, and discussions with individuals whom Petitioner authorized to speak on his behalf, I hereby verify that the statements made in this Petition and Complaint are true and correct to the best of my knowledge.


DATED:   1 of January of 2026  
              Chicago, IL

s/Angelika D. Charczuk  
Angelika D. Charczuk  
ADC Immigration Law  
2027 W. Division St., Suite 405  
Chicago, Illinois 60622  
Telephone: 773-217-0855  
Email: ang@adcimmigration.com  
Illinois ARDC No. 6338808

*Attorney for Petitioner-Plaintiff*

PETITION FOR WRIT OF HABEAS CORPUS - 29

## CIVIL LOCAL RULE 3.2 DISCLOSURE STATEMENT

Counsel for Petitioner furnishes this disclosure in compliance with Civil L.R. 3.2 and Fed. R. Civ. P. 7.1.

Full name of every party counsel represents in this case: Albeiro Remolina Ropero

The Petitioner is an individual, not a corporation.

Attorneys who will appear, or are expected to appear, for Petitioner include:

Angelika D. Charczuk, ADC Immigration Law.

DATED:    1 of January of 2026.          s/Angelika D. Charczuk
          Chicago, IL

                                         Angelika D. Charczuk
                                         ADC Immigration Law
                                         2027 W. Division St., Suite 405
                                         Chicago, Illinois 60622
                                         Telephone: 773-217-0855
                                         Email: ang@adcimmigration.com
                                         Illinois ARDC No. 6338808


                                         *Attorney for Petitioner-Plaintiff*

PETITION FOR WRIT OF HABEAS CORPUS - 30

## CERTIFICATE OF SERVICE

I, the undersigned counsel, hereby certify that on this date I filed the Petition for Writ of Habeas Corpus and all accompanying attachments through the Court's CM/ECF system. Service will be accomplished by CM/ECF upon all counsel of record, including the United States Attorney's Office for the Northern District of Illinois.

No party requires service by mail.

Respectfully submitted:

DATED:  1 of January of 2026.        s/Angelika D. Charczuk
        Chicago, IL                   Angelika D. Charczuk
                                      ADC Immigration Law
                                      2027 W. Division St., Suite 405
                                      Chicago, Illinois 60622
                                      Telephone: 773-217-0855
                                      Email: ang@adcimmigration.com
                                      Illinois ARDC No. 6338808

                                      *Attorney for Petitioner-Plaintiff*